NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180093-U

NO. 4-18-0093

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 7, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| LES DAVIS II, | ) | No. 16CF1312 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Leslie J. Graves, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding defendant forfeited his argument that the trial court failed to properly admonish prospective jurors pursuant to Illinois Supreme Court Rule 431(b).

¶ 2    Defendant, Les Davis II, appeals from his armed-habitual-criminal conviction, arguing the trial court erred by failing to properly admonish the prospective jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). We affirm.

¶ 3                              I. BACKGROUND

¶ 4                              A. The Charges

¶ 5    The State charged defendant by information with unlawful possession of a weapon by a felon (count I) (720 ILCS 5/24-1.1(a) (West 2014)) and being an armed habitual criminal (count II) (720 ILCS 5/24-1.7(a) (West 2014)), alleging that "on or about October 17,

2016," he knowingly possessed a "Remington 870 Express Magnum shotgun" after having previously been convicted of "Residential Burglary (720 ILCS 5/19-3(a-5)) in Sangamon County case number 12-CF-699 and Unlawful Possession of a Weapon by a Felon (720 ILCS 5/24-1.1(a)) in Sangamon County case number 12-CF-986 ***."

¶ 6                                      B. Jury Trial

¶ 7        The State called six witnesses at defendant's jury trial; defendant presented no evidence.

¶ 8                                      1. *Voir Dire*

¶ 9        During *voir dire*, the trial court did not admonish the prospective jurors as required by rule that a defendant's decision not to testify cannot be held against him or her. Additionally, instead of admonishing the venire that a defendant is not required to offer *any* evidence, the court stated several variations of the following legal principle: "a person that is charged with a crime is presumed to be innocent. They don't have to prove that."

¶ 10                                     2. *Evidence Presented*

¶ 11       We summarize only the evidence that is relevant to the issue raised on appeal.

¶ 12                                     a. Crystal Allison

¶ 13       Crystal Allison, defendant's mother, testified that on October 17, 2016, she was at her house—according to Crystal, defendant lived in the basement of the house and her daughter, Allison Davis, was also named on the lease—along with Allison, Allison's daughter, and defendant. Crystal "was grilling out back" when Allison came outside to inform Crystal that defendant was inside yelling at her and her daughter. Crystal went inside "to see what's going on" and got into a confrontation with defendant. Once the confrontation escalated, Crystal "went out the back door because, I don't know, I was kind of scared a little bit." Defendant followed

- 2 -

Crystal outside and continued to argue with her until Crystal's boyfriend "happened to walk up the driveway ***, and then that's when they started arguing and had their little tussle." At some point during the altercation, defendant threw a brick at Crystal's boyfriend, which led to the boyfriend leaving the property.

¶ 14     When Crystal's boyfriend left, defendant went back inside of the house. Crystal testified that she was scared so she texted her mother to call the police and then "I just told my daughter and my granddaughter, I was like, let's just go." Crystal testified that as the three of them were driving away, she saw defendant "sitting on the porch with [a] gun on his lap." Crystal further testified that the firearm "was pretty long *** like a shotgun." She conceded that she possessed a FOID card, but she testified that the shotgun she saw on defendant's lap did not belong to her.

¶ 15                    b. Lindzee Edwards

¶ 16     Lindzee Edwards, a patrol officer with the Springfield Police Department, testified that she was dispatched to Crystal's house on the evening of October 17, 2016. When Edwards arrived, she spoke with Crystal, who informed Edwards that defendant was inside of the house with a shotgun. Upon learning defendant may have been armed, Edwards called for additional officers to respond to the scene. Ultimately, seven officers arrived. The officers initially attempted to gain entry into the house through the front door but were unable to do so. As the officers were attempting to enter through the back door, defendant fled from the home through the front door. Two officers pursued defendant on foot but lost sight of him shortly after beginning their pursuit.

¶ 17                    c. Jeffrey Paoletti

¶ 18		Jeffrey Paoletti, a member of the Springfield Police Department's emergency response team, testified that after defendant had fled, Crystal consented to a search of her house. While conducting the search, Paoletti observed a bed and men's clothing in the basement. He testified that "[i]mmediately down the staircase basically right above the opening on the subfloor, the actual wooden structure that provides the flooring or the structure for the above level, there was like a small cubbyhole that the butt stock of a weapon was basically in plain view." Paoletti further testified that the firearm officers discovered was a loaded shotgun that he identified in court as a "Remington 870 Express Magnum 20-gauge."

¶ 19		3. *Verdict*

¶ 20		The jury found defendant guilty of both counts.

¶ 21		C. Sentence and Postsentencing Motion

¶ 22		The trial court merged the two counts and sentenced defendant to seven years' imprisonment on count II. Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 23		This appeal followed.

¶ 24		II. ANALYSIS

¶ 25		Defendant argues the trial court erred by failing to properly admonish the prospective jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).

¶ 26		Rule 431(b) requires trial courts to read four principles of law to prospective jurors and determine whether they understand and accept those principles. It states:

		"The court shall ask each potential juror, individually or in

		a group, whether that juror understands and accepts the following

		principles: (1) that the defendant is presumed innocent of the

charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 27    Defendant acknowledges he forfeited his argument by not objecting at trial but asks us to review it under the plain-error doctrine because the evidence was closely balanced. "The ultimate question of whether a forfeited claim is reviewable as plain error is a question of law that is reviewed *de novo*." *People v. Johnson*, 238 Ill. 2d 478, 485, 939 N.E.2d 475, 480 (2010).

¶ 28    "The plain-error doctrine permits a reviewing court to by-pass normal rules of forfeiture and consider '[p]lain errors or defects affecting substantial rights *** although they were not brought to the attention of the trial court.' " *People v. Eppinger*, 2013 IL 114121, ¶ 18, 984 N.E.2d 475 (quoting Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)). A forfeited claim is reviewable as plain error "when *** a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant ***." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410 (2007). The defendant bears the

burden of demonstrating plain-error review is appropriate. *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). "As a matter of convention, our court typically undertakes plain-error analysis by first determining whether error occurred at all." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1059 (2010).

¶ 29 Here, defendant argues that the trial court violated Rule 431(b) and, by extension, committed clear or obvious error in failing to properly admonish the venire that (1) a defendant's decision not to testify cannot be used against him or her and (2) a defendant is not required to offer *any* evidence. Defendant further argues that the evidence was closely balanced. In response, the State does not address whether error occurred and instead argues only that plain error cannot be found as the evidence was not closely balanced. Because the State makes no argument that defendant did not satisfy his initial burden of demonstrating clear or obvious error occurred, we will treat its silence on the issue as a concession that error occurred and focus our inquiry on the State's argument that defendant has failed to establish the evidence was closely balanced.

¶ 30 To determine whether the evidence was so closely balanced that the error alone threatened to tip the scales of justice against defendant, we "must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53, 89 N.E.3d 675. Our inquiry "involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 31 The elements of the armed-habitual-criminal statute include (1) possession of any firearm (2) after having been convicted of two or more enumerated offenses. See 720 ILCS 5/24-1.7(a) (West 2014). Defendant challenges only the former element. The parties agreed to the jury instruction on possession, which read: "Possession may be actual or constructive. A person has

actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing either directly or through another person."

¶ 32    The following evidence was presented at defendant's trial on the element of possession: The sole witness to testify to personally observing defendant with a firearm, Crystal, testified that she saw defendant sitting on the porch with a "pretty long" firearm on his lap that looked "like a shotgun." While Crystal conceded that she had a FOID card, she testified that the firearm she saw on defendant's lap did not belong to her. Paoletti, one of the officers who searched the house shortly after defendant fled, testified that the officers' search uncovered a loaded "Remington 870 Express Magnum 20-gauge" shotgun in the basement. Paoletti further testified that there was a bed and men's clothing in the basement, and Crystal testified that defendant lived in the basement. Crystal's daughter was also named on the lease.

¶ 33    Defendant points to the following evidence: (1) only a single witness allegedly saw defendant possess a firearm, and that witness did not identify the firearm defendant was charged with possessing in court; and (2) defendant was not the only resident of the house and one of the other residents had a FOID card.

¶ 34    We find the evidence was not closely balanced. The evidence supporting defendant's conviction includes the following: (1) Crystal—whose credibility was in no way impugned—testified that she observed defendant with a shotgun on his lap and the shotgun did not belong to her and (2) the officers located a 20-gauge shotgun in the basement shortly after Crystal said she saw defendant with a shotgun, the basement contained a bed and men's clothing, and Crystal testified that defendant lived in the basement. After conducting a commonsense assessment of the record, we find the evidence supporting a finding of guilt was not close.

¶ 35    Accordingly, we honor defendant's forfeiture of his argument. See, *e.g.*, *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653 (2008) ("When a defendant fails to establish plain error, the result is that the procedural default must be honored.").

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, we affirm the trial court's judgment.

¶ 38    Affirmed.